**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA DIVISION**

| | |
|---|---|
| LEAH M. BURN,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT MAINTENANCE AND CONSULTING, d/b/a SQUARE ONE CREDIT MANAGEMENT,<br><br>Defendant. | CIVIL ACTION<br><br>COMPLAINT 2:26-cv-07641<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** LEAH BURN ("Plaintiff"), by and through the undersigned counsel, complaining of CREDIT MAINTENANCE AND CONSULTING doing business as SQUARE ONE CREDIT MANAGEMENT ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), pursuant to 73 P.S. § 201-1 *et seq*., the Pennsylvania Debt Settlement Services Act ("DSSA"), pursuant to 63 P.S. § 2552 *et seq*., breach of contract, breach of fiduciary duty, violations of the Credit Repair Organizations Act ("CROA"), pursuant to 15 U.S.C. § 1679 *et seq*., and violations of the Pennsylvania Credit Services Act ("PCSA"), pursuant to 73 P.S. § 2181 *et seq*.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff lives in the Eastern District of Pennsylvania, Defendant conducts business in the Eastern District of Pennsylvania, and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Pennsylvania.

## PARTIES

4. Plaintiff is a natural person and consumer, over 18 years-of-age, residing in Solebury, Pennsylvania.

5. Defendant is a debt settlement company that purports to help consumers settle their debts and improve their credit scores.

## FACTS SUPPORTING CAUSES OF ACTION

6. In 2020, Plaintiff had a number of negative accounts appearing on her credit report, prompting Plaintiff to begin looking for companies who may be able to assist in improving Plaintiff's overall credit rating and removing inaccurate or identity theft-related accounts.

7. Plaintiff spoke with Defendant, and Defendant's agent represented to Plaintiff that it would be able to (1) settle Plaintiff's debt; and (2) improve her credit.

8. Defendant further represented to Plaintiff that all she would need to do is make monthly payments over a certain period of time and that Defendant would utilize the payments to expeditiously resolve Plaintiff's enrolled debts.

9. In 2020, having relied on Defendant's representations, Plaintiff formally enrolled in Defendant's credit repair program by entering into a contract with Defendant.

10. Specifically, Plaintiff paid Defendant approximately $1,400.00 between June 2020 and September 2020, along with additional payments after successfully completing the program.

11. Pursuant to the contract, Plaintiff was obligated to make periodic payments to Defendant for its credit repair services.

12. Plaintiff proceeded to make the required payments to Defendant in a timely manner.

13. During the enrollment period, Plaintiff was repeatedly informed that Defendant was actively working to remove negative accounts from Plaintiff's credit report and improve Plaintiff's credit standing.

14. Although certain accounts were removed, negative accounts later reappeared on Plaintiff's credit report, causing Plaintiff to seek Defendant's assistance once again.

15. In or around October 2023, having relied on Defendant's continued representations, Plaintiff re-enrolled in Defendant's credit repair program.

16. Plaintiff signed up for Defendant's credit repair services based on its representations that it would remove inaccurate, unverifiable, and identity theft-related accounts from Plaintiff's credit report and improve her credit score.

17. Throughout its dealings with Plaintiff, Defendant deceptively and misleadingly strung Plaintiff along, telling Plaintiff what she wanted to hear in order for Plaintiff to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's program.

18. Furthermore, Defendant repeatedly assured Plaintiff that it was actively disputing and working to remove all eligible negative accounts appearing on Plaintiff's credit report.

19. However, Defendant later informed Plaintiff that it could not address certain accounts despite previously representing that it would be able to remove such items.

20. As a result of Defendant's failure to perform as promised, numerous negative accounts remained on Plaintiff's credit report.

21. Despite Plaintiff making substantial payments to Defendant, Defendant failed to meaningfully improve Plaintiff's credit profile or achieve the results it represented it could obtain.

22. Despite Defendant promising to remove inaccurate, unverifiable, and identity theft-related accounts from Plaintiff's credit report, Defendant failed to make meaningful progress in fulfilling such promises.

23. Specifically, although Plaintiff paid Defendant approximately $1,000.00 between September 2023 and February 2024, in addition to the approximately $1,400.00 previously paid during her initial enrollment, Defendant continued collecting fees, requested additional payments, and failed to fully perform the services it promised to provide.

24. Plaintiff suffered significant damages as a result of Defendant's misrepresentations and omissions, including: financial losses, emotional distress, aggravation, mental anguish, continued negative credit reporting, denial of credit opportunities, and damage to her creditworthiness.

25. Simply put, Plaintiff found herself in a much worse financial and credit position after enrolling in Defendant's credit repair program, including being denied a mortgage pre-approval and a credit card despite paying Defendant substantial sums for promised credit improvement services.

## COUNT I – VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

26. Plaintiff restates and realleges all preceding paragraphs as though fully set forth herein.

27. Plaintiff is a "[p]erson" as defined by 73 P.S. § 201-2(2).

28. Defendant is a "[p]erson" as defined by 73 P.S. § 201-2(2).

29. The PUTPCPL, pursuant to 73 P.S. § 201-3, declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The PUTPCPL, pursuant to 73 P.S. § 201-2(4), defines "unfair or deceptive acts or practices" to include "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." § 201-2(4)(xxi).

30. Defendant violated the PUTPCPL by, *inter alia*, (1) failing to pay Plaintiff's creditors with the funds that Plaintiff paid into the debt settlement program; (2) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (3) failing to adequately communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (4) charging fees that are not authorized by contract and/or statute; (5) putting its financial interests ahead of Plaintiff's interests; (6) falsely representing to Plaintiff that Defendant's program could improve Plaintiff's credit; and (7) withdrawing funds from Plaintiff's designated account without her authority.

31. Moreover, the PCSA, pursuant to 73 P.S. § 2190(a), provides that a violation of the PCSA constitutes a violation of the PUTPCPL.

32. Accordingly, Defendant violated 73 P.S. § 201-3 of the PUTPCPL through its violations of the PCSA (see below).

33. As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. An award of actual damages;

b. An award of punitive damages;

c. An award of attorney's fees and costs; and

d. Any further relief the Court deems just and appropriate.

## COUNT II - VIOLATIONS OF THE PENNSYLVANIA DEBT SETTLEMENT SERVICES ACT

34. Plaintiff restates and realleges all preceding paragraphs as though fully set forth herein.

35. Plaintiff is a "individual" as defined by the PDSSA.

36. Defendant is a "provider" of "debt management service" as defined by the PDSSA.

**a. Violations of 63 P.S. § 2552(a)-(d)**

37. Pursuant to 63 P.S. § 2552(a)–(b) of the PDSSA, a provider must make the enumerated written disclosures and "may not misrepresent, directly or by implication, any material aspect of any debt settlement services."

38. Defendant violated 63 P.S. § 2552 by, *inter alia*, falsely representing to Plaintiff that its program could improve Plaintiff's credit score when it had actual knowledge that its program would destroy Plaintiff's credit score.

39. Defendant further violated 63 P.S. § 2552 by misrepresenting the efficacy of its program.

40. The PDSSA, pursuant to 63 P.S. § 2552(b)-(d), a provider is prohibited from misrepresenting material aspects of the services, including savings, timing, required accumulations, *effects on credit* and collection efforts, nonprofit status, total program cost, and from charging fees before the statutory prerequisites are met or mishandling client funds in the dedicated account.

41. Defendant violated the PDSSA by, *inter alia*, (1) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (2) putting its financial interests ahead of Plaintiff's interests; (3) falsely representing to Plaintiff that its program could improve Plaintiff's credit when it had knowledge that its program would destroy Plaintiff's

credit; (4) charging fees that are not authorized by contract and/or statute; and (5) withdrawing funds from Plaintiffs' designated account without Plaintiffs' authorization.

**b. Violations of 63 P.S. § 2552(a)(5)**

42. Section 2552(a)(5) of the PDSSA requires that a debt settlement provider disclose that the "individual may terminate the debt settlement services agreement upon three days' written notice to the debt settlement provider."

43. Defendant violated §2552(a)(5) of the PDSSA by failing to include the above referenced disclosure in its contract with Plaintiff.

**c. Violations of 63 P.S. § 2552(b)(5)**

44. Section 2552(b)(5) of the PDSSA prohibits a debt settlement provider from misrepresenting, directly or by implication, the effect of the service on the individual's creditworthiness.

45. Defendant violated §2552(b)(5) of the PDSSA by falsely representing to Plaintiff that its program could improve Plaintiff's credit score.

46. As stated above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. An award of actual damages;

b. An award of punitive damages;

c. An award of attorney's fees and costs; and

d. Any further relief the Court deems just and appropriate.

## COUNT III – BREACH OF CONTRACT

47. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

48. The contract for debt consolidation services between Plaintiff and Defendant is a valid and enforceable contract.

49. The elements of breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.

50. Pursuant to the contract between the Parties, Defendant was required to, *inter alia*: (1) contact Plaintiff's enrolled creditors; (2) provide debt resolution services to the best of its ability to effectuate reasonable settlement(s) on behalf of Plaintiff; and (3) negotiate and resolve Plaintiff's enrolled debt. Moreover, the contract required Defendant to obtain Plaintiff's authority to withdraw funds from the designated saving account.

51. Defendant breached the underlying contract by, *inter alia*: (1) failing to provide debt resolution services to the best of its ability to effectuate reasonable settlement(s) on behalf of Plaintiff; (2) putting its financial interests ahead of Plaintiff and her creditors by depleting the designated account to pay itself and leaving limited funds for Plaintiff's other creditors; (3) charging Plaintiff for settlement fees that it was not contractually or legally entitled to; and (4) withdrawing settlement fees from Plaintiff's designated savings account without Plaintiff's authorization.

52. As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. Finding that Defendant breached the underlying contract and the implied covenant of good faith and fair dealing;

b. Award of compensatory damages;

c. Award of punitive damages; and,

d. Any further relief deemed just and proper.

## COUNT IV – BREACH OF FIDUCIARY DUTY

53. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

54. Defendant owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendant was purporting to provide proper debt consolidation and financial services to Plaintiff, inherently rendering it Plaintiff's fiduciary with regards to the financial services it was agreeing to perform.

55. Defendant breached its fiduciary duty to Plaintiff by, *inter alia*, (1) failing to pay Plaintiff's creditors with the funds that Plaintiff paid into the debt settlement program; (2) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (3) failing to communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (4) pocketing unearned fees and fees not authorized by the contract and/or statute; (5) putting its financial interests ahead of the interests of Plaintiff; and (6) withdrawing settlement fees from Plaintiff's designated savings account without Plaintiff's authorization.

56. As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a. Finding that Defendant breached its fiduciary duty to Plaintiff;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Enjoining Defendant from continuing its unlawful conduct; and,

f. Awarding any other relief as the Court deems just and appropriate.

## <u>COUNT V – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT</u>

57. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

58. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

59. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

**a. Violations of CROA § 1679b(a)**

60. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

61. Claimant was induced by Respondent's representations that Respondent would be able to handle consumer's debts by negotiating with its creditors and reaching a settlement on his behalf. Moreover, Respondent promised that Claimant's creditworthiness would improve as a result of Respondent's credit repair program. Despite these representations, Respondent failed to complete the promises it made to Claimant in its initial meeting that convinced Claimant to sign

up for Respondent's program. Respondent failed to improve Claimant's credit score as it agreed to do.

62. Respondent violated of §§ 1679b(a)(3) and (4) by, *inter alia*, (1) failing to pay Claimant's creditors with the funds that Claimant paid into the debt settlement program; (2) failing to provide debt settlement services that it was contractually obligated to provide; (3) failing to promptly communicate with Claimant's creditors in an effort resolve Claimant's debts; (4) failing to resolve any of Claimant's debts or improve Claimant's credit score; (5) putting its financial interests ahead of Claimant's interests; (6) falsely representing that its program would improve Claimant's credit scores; (7) withdrawing funds from Claimant's designated savings account without Claimant's authorization; and (8) misleading Claimant into believing she had full control over the designated savings account.

**b. Violations of CROA § 1679b(b)**

63. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

**c.** Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed.

**d. Violations of CROA § 1679c**

64. The CROA, pursuant to 15 U.S.C. § 1679c, outlines the disclosures that must be provided to consumers as well as when and how such disclosures must be provided.

65. Defendant violated the above provision of the CROA through its failure to provide the written disclosures required by the CROA in the manner required.

**d. Violations of CROA § 1679d**

66. The CROA, pursuant to 15 U.S.C. § 1679d(b)(4), outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

67. Defendant violated § 1679d(b)(4) of the CROA through its failure to contain the required disclosure in bold face type in immediate proximity for the place reserved for Plaintiff's signature on the contract.

68. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at hearing, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at hearing, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Court deems just and appropriate.

## COUNT VI – VIOLATIONS OF THE PENNSYLVANIA CREDIT SERVICES ACT

69. Plaintiff restates and realleges all preceding paragraphs as though fully set forth herein.

70. Plaintiff is a "buyer" as defined by 73 P.S. § 2182.

71. Defendant is a "credit services organization" as defined by 73 P.S. § 2182.

72. The PCSA, pursuant to 73 P.S. § 2183, provides a list of prohibited conduct for credit services organizations.

73. Pursuant to 73 P.S. § 2183(1) a credit services organization shall not "charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer."

74. Defendant violated 73 P.S. § 2183(1) by charging and receiving money prior to **full** performance of the agreed services. Defendant charged Plaintiff for services without performing services that would justify such charges.

75. As outlined above, Defendant violated the above referenced provisions of the 73 P.S. § 2183(1) in much the same way it violated 15 U.S.C. § 1679b(b).

76. Pursuant to 73 P.S. § 2183(4) a credit services organization shall not "make or use any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage directly or indirectly in any act, practice or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization."

77. Defendant violated 73 P.S. § 2183(4) by, *inter alia*, falsely representing that its program could improve Plaintiff's credit score and falsely representing the efficacy of its debt settlement services.

78. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages, pursuant to 73 P.S. § 201-9.2(a);

c. Awarding Plaintiff punitive damages, pursuant to 73 P.S. § 201-9.2(a);

d. Awarding Plaintiff costs and reasonable attorney fees; and,

e. Awarding any other relief the Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: October 5, 2026

Respectfully Submitted,

*/s/ Alexander J. Taylor*

Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Ave.,
Suite 200
Lombard, Illinois 60148
(630) 575-8181 (phone)
ataylor@sulaimanlaw.com